IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3006-FL

| | | |
|---|---|---|
| CHRISTOPHER HELMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WARDEN SARA REVELL; DOCTOR | ) | |
| DUCHESNE; WARDEN TRACY | ) | |
| JOHNS; PHYSICIANS ASSISTANT | ) | |
| DENUTA GONZALEZ; DOCTOR | ) | |
| DERICK PHILLIP; and TERRY | ) | |
| KILPATRICK, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss or, in the alternative, for

summary judgment pursuant to Federal Rule of Civil Procedure 56[1] (DE # 20) of defendants Warden

Tracy Johns ("Johns"), Physicians Assistant Denuta Gonzalez ("Gonzalez"), Dr. Derick Phillip

("Phillip"), and Terry Kilpatrick ("Kilpatrick"). Also before the court is plaintiff's motion to add

defendant Dr. Roscoe Ramsey ("Ramsey") and remove defendants Johns and Kilpatrick (DE # 25),

as well as plaintiff's motion for a continuance pursuant to Federal Rule of Civil Procedure 56(d).[2]

These matters are ripe for adjudication. For the following reasons, the court grants defendants'

motion, grants plaintiff's motion to add and remove defendants, denies plaintiff's request for a

---

[1] Because the parties attached materials outside of the pleadings, the court construes defendants' motion as a motion for summary judgment. The court notes that defendants' exhibits 1-11 also are attached to plaintiff's complaint.

[2] Plaintiff's motion for continuance is included in his response in opposition to defendants' motion, lodged on the docket at entry 26.

continuance, and dismisses plaintiff's claim against Ramsey.

## STATEMENT OF THE CASE

On January 13, 2010, plaintiff filed this *pro se* complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against the above named defendants as well as Warden Sara Revell ("Revell") and Dr. Duchesne ("Duchesne"). Plaintiff alleges that defendants acted with deliberate indifference to his degenerative disc disease and to his neurological and urological complaints. On June 11, 2010, this court conducted a frivolity determination pursuant to 28 U.S.C. § 1915, and dismissed Revell and Duchesne because plaintiff did not allege facts to demonstrate these defendants had knowledge of the alleged deliberate indifference. The court allowed plaintiff to proceed against the remaining defendants.

On September 22, 2010, Johns, Gonzalez, Kilpatrick, and Phillip filed a motion for summary judgment, arguing that plaintiff's deliberate indifference claim is without merit. Alternatively, defendants argue they are entitled to qualified immunity. Plaintiff subsequently filed a response and a motion to add defendant Ramsey and to dismiss his claims against Johns and Kilpatrick.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. On September 17, 2007, plaintiff arrived at the Federal Correctional Institution at Butner, North Carolina ("Butner"). (Defs.' Mem. Ex. 1; Mem. in Supp. of Compl. 1, 2.) He had a history of dysuria and mental illness. (Id.) Plaintiff's primary care provider at Butner was Gonzalez.

On September 17, 2007, plaintiff complained to the Butner medical staff of chronic headaches, dizziness, cognitive problems, stabbing and shooting pains, as well as balance and coordination problems. (Mem. in Supp. of Compl. p. 2.) On May 18, 2008, psychologist Gray

2

diagnosed plaintiff with somatization disorder.[3]  (Id.)  Plaintiff's symptoms slowly improved over

the next nine months.  (Id. p. 3.)

On October 31, 2008, Dr. Adrian Ogle conducted a cystoscopy on plaintiff and discovered

and corrected two urethral strictures. (Defs.' Mem. Ex. 1.) On December 26, 2008, plaintiff inserted

a writing pen into his urethra in an act of self-mutilation. (Mem. in Supp. of Compl. 6; Defs.' Mem.

Ex. 2.) Plaintiff was transported to the hospital that same day, the pen was successfully extracted,

and he was returned to Butner on January 5, 2009. (Defs.' Mem. Ex. 2.)

Early morning on January 29, 2009, plaintiff declared a medical emergency, complaining of

seizure like activity. (Defs.' Mem. Ex. 3.) Paramedic Wayne Ramsey saw plaintiff and noted that

plaintiff would stop the seizure-like activity when he was asked to stop and calm down.  (Id.)

Plaintiff was given Ativan.  Paramedic Wayne Ramsey informed plaintiff that he may have an

electrolyte imbalance, and plaintiff's diet was adjusted.

Later on January 29, plaintiff had a follow-up appointment with Phillip.  (Id.)  Plaintiff's

medical records state:

> [Plaintiff] reported that he has a mild tremor since starting lithium.
> He said that he had a headache 2 days ago but it has resolved.  He has
> a hx of migraine headaches and had an MRI of the brain it was
> normal. He reports that he has a 'leak' from his penis and is worried
> about it . . . He claims he was treated without meds for the bipolar.
> The muscle spasms started yesterday and occur occasionally but he
> never loses consciousness or spincter tone.

(Id.)  Phillip conducted a neurological exam and the results were normal. (Id.)  Plaintiff's medical

---

[3] Somatization disorder is a chronic, severe, psychiatric disorder characterized by many recurring clinically significant physical complaints (including pain, gastro-intestinal, sexual, and neurologic symptoms) that cannot be explained fully by a physical disorder. See Alton v. Correctional Medical Services, 2011 WL 1466503, at *5 n.7 (D. Md. Apr. 18, 2011) (citing Merck Manual, 17th Ed., at pp. 1508-9), aff'd, No. 11-6666, 2011 WL 3705069 (4th Cir. 2011)).

3

records further state: "No muscle spasms felt when he would throw himself backwards because of spasms. Palpitation of the muscles of the back, abdomen and extremities revealed soft muscles without any spasms. No neurologic deficits found . . . . He does not appear to have a seizure disorder or musculoskeletal spasms." (Id.) Phillip conferred with Dr. Owens and determined that plaintiff should restart valproic acid, and that his symptoms likely were connected to his valproic acid cessation. (Id.)

That same day, plaintiff tested positive for Methicillin-Resistant Staphylococcus Aureus ("MRSA"). Plaintiff was treated with a ten (10) day course of antibiotics. (Defs.' Mem. Ex. 4.) On February 25, 2009, a urinalysis reflected a negative test for MRSA, and on February 27, 2009, a urine culture indicated no further bacterial growth. (Id. Ex. 5.) On March 3, 2009, plaintiff was seen for his complaint of having a discharge from his penis, as well as a burning and tingling sensation during urination. (Def.s' Mem. Ex. 4.) The results of his examination were "unremarkable." (Id.)

On March 27, 2009, Dr. Owens conducted a chronic care visit with plaintiff. (Defs.' Mem. Ex. 6.) Plaintiff reported concerns with his memory and concentration. (Id.) Plaintiff's medical records state:

> Reports that he has been keeping a log for a year now, up to over 100 pages and can look back and see pattern of complaints. Today he brings notes from his logs that document numerous issues incl light-headedness, difficulties with balancing, and pain, mind-fog, giddiness, chronic fatigue, Bilat numbness in L/E more pronounced on left, and eyes blurring. States he has looked at eye in mirror and noticed unequal reaction in pupil and reports that others have noticed as well.

(Id.) Dr. Owens conducted a mental health exam and reported that plaintiff's chronic Axis II borderline personality disorder had not improved. (Id.)

4

On April 27, 2009, plaintiff submitted a sick call request, complaining of green pus in his prostate fluid. (Mem. in Supp. Compl. 7.) On May 26, 2009, plaintiff submitted a sick call request complaining of convulsions, fatigue, muscle weakness, difficulty walking, and multiple other complaints about "every part in his body," and was seen by Gonzalez. (Defs.' Mem. Ex. 7.) Plaintiff also complained of shooting pain in multiple locations. (Id.) Gonzalez conducted a neurological exam and reported normal results. (Id.) Plaintiff also tested negative for MRSA, and Gonzalez referred him to the psychology clinic. (Id.)

On July 20, 2009, Gonzalez saw plaintiff in response to plaintiff's complaints of convulsions, inability to concentrate, headaches, nausea, constant muscle fatigue, as well as muscle spasms in his neck, legs, and arms. (Defs.' Mem. Ex. 8.) Gonzalez noted that, although plaintiff was not cooperative, he appeared well, alert, oriented, and did not appear to be in pain. (Id.) Gonzalez ordered laboratory tests to determine whether there were any abnormalities with his electrolytes. (Id.) Gonzalez conducted a neurological examination and the results were normal. (Id.) Gonzalez consulted with Ramsey, and Ramsey noted that "[t]he 'convulsions' or 'spasms' or 'involuntary' movements seem to be voluntary" and that plaintiff stated "that if all the test results were negative, then 'I am screwed.' " (Id.) Ramsey concluded that plaintiff's comment meant he wanted to be medically ill. (Id.) Ramsey also informed plaintiff that he was not opposed to doing a Magnetic Resonance Imaging ("MRI") test of his head, if he felt such a test was necessary. (Id.)

On August 24, 2009, plaintiff submitted a sick call request, complaining of a lump on his left testicle. (Defs.' Mem. Ex. 9.) Gonzalez examined plaintiff and found the results to be normal, and noted that he did not find any masses or hardness in his testicles. (Id.)

On September 1, 2009, plaintiff was seen for complaints in connection with his genitals.

5

(Defs.' Mem. Ex. 10.) On September 3, 2009, Gonzalez ordered laboratory tests and conducted an exam of plaintiff, noting testicular tenderness, epididymal tenderness, and swelling. (Id.) Gonzalez diagnosed plaintiff with klebsiella pneumoniae, prescribed ciprofloxacin tablets for ten (10) days, and scheduled him for a follow up visit on September 9, 2009. (Id.) At plaintiff's follow-up visit, Gonzalez noted: "[Plaintiff] states that he is feeling much better, less swelling and redness, continue antibiotic as directed. His left testicle infection noticeable improved, less tender, but mild swelling and redness [] still remains. Patient instructed to continue his antibiotic and follow up once again, upon completion of his treatment." (Id.) Gonzalez scheduled a follow-up visit for September 15, 2009. (Id.) At his September 16, 2009,[4] follow-up visit, Gonzalez reported: "Patient d[e]nies any pain in his left testicle. Patient claims that he has some mass in his left testicle. Left testicle-slight non tender swelling still palpable possible due to post infection scarring." (Id.) Gonzalez scheduled a follow-up appointment for October 21, 2009. (Id.)

On September 28, 2009, Gonzalez saw plaintiff in response to plaintiff's complaints of difficulty walking, leg spasms, headaches, and an increase of the size of the lump on his testicle. (Id.) Plaintiff informed Gonzalez that he may have "some brain virus or maybe lupus." (Id.) Gonzalez reported normal neurological and male exams. (Id.)

In October 2009, plaintiff complained of problems with his genitals. On October 19, 2009, Gonzalez examined plaintiff and noted that a recent urine culture was positive for klebsiella pneumonia. (Defs.' Mem. Ex. 11.) Gonzalez prescribed plaintiff ciprofloxacin tablets to be taken for thirty (30) days, and scheduled a follow-up visit for November 27, 2009. (Id.) The next day,

---

[4] It appears that although plaintiff's follow-up visit was scheduled for September 15, 2009, he attended his appointment on September 16, 2009.

6

Gonzalez altered plaintiff's prescription for ciprofloxacin tablets, requiring that plaintiff take two tablets per day for fourteen (14) days. (Id.)

On November 23, 2009, Gonzalez saw plaintiff in response to a sick call request. Plaintiff stated the following to Gonzalez: "I have a pain while urinating, burning sensation for 4-5 month[s] on and off, clear fluid coming out of my penis but sometimes with some pus and blood. I have an epilepsy for 10 months and nothing was done for me, I am reading now Current Medical Diagnosis 2009 and I know everything about epilepsy and all the tests that needs to be done to differentiate my condition. I want to see Dr. Ramsey." (Id. Ex. 12.) Gonzalez conducted a rectal exam, for which the results were normal. (Id.) Gonzalez also ordered laboratory testing. Id. Ramsey made the following comments: "This I/M is obsessed with the notion that he has medical problems. He does not have seizures. He has been treated for UTI. He seems to have OCD." (Id.) Gonzalez scheduled a follow-up for November 30, 2009. (Id.)

Plaintiff subsequently was released from incarceration, and, on November 4, 2010, visited the Emergency Room ("ER") at Riverside Regional Hospital in Newport News, Virginia. (Pl.'s Resp. Attach.) Plaintiff was diagnosed with myoclonus and provided a follow up contact, Dr. Kamel Ben-Othmane. (Id.) Plaintiff states that the physicians at the ER did not believe that his condition was life threatening. (Pl.'s Resp. 12.) Plaintiff has not followed up with a physician after his ER visit.

## DISCUSSION

A.    Motion to Voluntarily Dismiss

An action may be dismissed voluntarily by the plaintiff without order of the court by filing a notice of dismissal at any time before service by the adverse party of an answer or a motion for

7

summary judgment. See Fed. R.Civ. P. 41(a)(1). Otherwise an action shall not be dismissed on the plaintiff's request except upon an order of the court. See Fed. R.Civ. P. 41(a)(2).

In this case, defendants filed a motion for summary judgment. Because defendants filed a motion for summary judgment, plaintiff's action may only be voluntarily dismissed pursuant to rule 41(a)(2), which permits voluntary dismissal "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A plaintiff's motion under rule 41(a)(2) should not be denied absent substantial prejudice to the defendants. Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986).

Plaintiff states that he no longer wishes to pursue his action against Johns or Kilpatrick, and these defendants do not object to the dismissal of these claims. The court finds this reasoning is consistent with rule 41(a)(2). Accordingly, plaintiff's request for voluntary dismissal of Johns and Kilpatrick is GRANTED.

B.     Motion to Amend

Plaintiff seeks to amend his complaint to include Ramsey as a defendant in this action. Plaintiff requires leave of court to amend his complaint. See Fed. R. Civ. P. 15(a). "Motions to amend are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). A district court may deny a motion to amend a pleading "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988). The court finds that justice requires that plaintiff be permitted to amend his complaint; therefore his motion is GRANTED.

C.    Frivolity Review

The court next conducts a review of plaintiff's amended pleadings, pursuant to 28 U.S.C. §
1915(e)(2)(B). The Prison Litigation Reform Act directs the court to dismiss a prisoner's complaint
*sua sponte* at any time "if the court determines that . . . the action . . . is frivolous . . . [or] fails to
state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)(ii).  A complaint may
be found frivolous because of either legal or factual deficiencies.  First, a complaint is frivolous
where "it lacks an arguable basis . . . in law." Neitzke v. Williams, 490 U.S. 319, 325 (1989).
Second, a complaint may be frivolous where it "lacks an arguable basis . . . in fact." Id. at 325.
Legally frivolous claims are based on an "indisputably meritless legal theory" and include "claims
of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 74 (4th
Cir. 1994) (quoting Neitzke, 490 U.S. at 327).

Plaintiff alleges Ramsey acted with deliberate indifference to his medical needs.  The Eighth
Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  In
order to establish a claim under the Eighth Amendment, a plaintiff must satisfy a two-pronged test
consisting of an objective prong and a subjective prong. Rish v. Johnson, 131 F.3d 1092, 1096 (4th
Cir. 1997).  To satisfy the objective prong, an inmate  must show that "the deprivation of [a] basic
human need was objectively 'sufficiently serious.'" Id. (quoting Strickler v. Waters, 989 F.2d 1375,
1379 (4th Cir. 1993))(alteration in original) (emphasis removed).

Assuming without deciding that plaintiff is able to satisfy the objective prong of the Eighth
Amendment test, the court considers the second prong of the Eighth Amendment test whether
defendant acted with deliberate indifference.  "Deliberate indifference entails something more than
mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose

9

of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Here, plaintiff alleges that during an appointment with Ramsey on July 20, 2009, Ramsey ordered an MRI test, but the test was never performed. The medical record from that date does not state that an MRI was ordered. (Defs.' Mem. Ex. 8.) Instead, it states Ramsey had a discussion with plaintiff for more than one hour, during which he told plaintiff he was not against doing imaging studies if he thought such procedures were necessary. Ramsey also stated that plaintiff mentioned numerous vague and nonspecific complaints, and that his convulsions or spasms appeared voluntary. Plaintiff additionally complains that his requests to see Ramsey were ignored. However, as stated, plaintiff saw Ramsey on July 20, 2009, and Ramsey reviewed and co-signed the reports from Gonzalez's clinical encounters with plaintiff on September 3, 2009, October 20, 2009, and November 23, 2009. Accordingly, the record reflects that Ramsey was not deliberately indifferent to plaintiff's medical care, but that plaintiff disagreed with his treatment. This does not state a claim for deliberate indifference; therefore, plaintiff's claim against Ramsey is DISMISSED as frivolous. See Wright, 766 F.2d at 849.

10

D.   Motion for Continuance

Before addressing defendants' motion for summary judgment, the court considers plaintiff's

request for discovery pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)).[5] "As

a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" Evans

v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted).  Rule

56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may: (1) defer considering the motion or deny it; (2) allow time
> to obtain affidavits or declarations or to take discovery; or (3) issue
> any other appropriate order.

Thus, Rule 56(d) allows a court to delay ruling on a motion for summary judgment if the nonmoving

party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El

v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted).  However, "Rule 56(d) affidavits

cannot simply demand discovery for the sake of discovery." Young v. UPS, 2011 WL 665321, *20

(D. Md. Feb. 14, 2011).  "Rather, to justify a denial of summary judgment on the grounds that

additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the]

opposition.' " Scott v. Nuvell Fin. Servs., 2011 WL 2222307, *4 (D. Md. June 7, 2011).  A non-

moving party's Rule 56(d) request for discovery is properly denied "where the additional evidence

sought for discovery would not have by itself created a genuine issue of material fact sufficient to

defeat summary judgment." Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir.

---

[5] Effective December 1, 2010, the Supreme Court amended Rule 56, and what is now Rule 56(d) previously was codified as Rule 56(f). See Fed.R.Civ.P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged . . . Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).")

11

1995).

Here, plaintiff states that a continuance is necessary in order to allow sufficient time to obtain discovery to establish a physical injury necessary to satisfy the objective prong of the Eighth Amendment test for a constitutional violation. However, as discussed *infra*, the court assumes that plaintiff established the objective prong of the Eighth Amendment test. Accordingly, discovery as to this issue is not necessary to create a genuine issue of material fact. Plaintiff also requests a continuance to allow him time to "amend/supplement his complaint if plaintiff fails at some point to establish a required legal principle." (Pl.'s Resp. 13.) This vague request, however, is insufficient to obtain a continuance pursuant to Rule 56(d). Finally, defendants have invoked the affirmative defense of qualified immunity, and are entitled to a resolution of the issue prior to the burden of litigation, including discovery. See Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curium). Based upon the foregoing, the court denies plaintiff's request for a continuance to conduct discovery pursuant to Rule 56(d).

E.      Summary Judgment

    1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.      Analysis

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808 (2009). A court has discretion to decide which step of the two--prong test to analyze first. Pearson, 129 S.Ct. at 821.

The court first addresses whether defendants acted with deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment. As with its frivolity review of plaintiff's Eighth Amendment claim against Ramsey, the court assumes without deciding that plaintiff is able

13

to satisfy the objective prong of the test. Accordingly, the court's analysis focuses on the second prong--whether defendants acted with deliberate indifference.

Plaintiff alleges defendants acted with deliberate indifference to his degenerative disk disease, but has not alleged any facts to support such a claim. Plaintiff also generally alleges that Phillip falsified his medical records on January 29, 2009, and February 26, 2009, but has not provided factual support for this claim. Although *pro se* litigants are held to less stringent pleading standards than attorneys, the court is not required to accept as true legal conclusions or unwarranted factual inferences. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). There is a minimum level of factual support required. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Because plaintiff has not provided any allegations to support these claims, they are DISMISSED without prejudice.

Plaintiff states that defendants refused to treat his urological complaints because his urological issues were due to self-mutilation. However, the record belies this contention in that, on October 31, 2008, Dr. Ogle conducted a cystoscopy and corrected two urethral strictures. On January 29, 2009, plaintiff was diagnosed and treated for MRSA and received several related diagnostic laboratory tests thereafter. On August 24, 2009, plaintiff was examined for genital abnormalities and was treated with antibiotics for klebsiella pneumoniae. Plaintiff thereafter had several follow-up visits. At one follow-up visit, Gonzalez reported that plaintiff's genital abnormalities likely could be attributed to post-infection scarring. In October 2009, plaintiff again was treated with antibiotics for klebsiella pneumonia. Finally, plaintiff complains that Phillip refused to see him on February 26, 2009, but his medical records indicate that he received treatment on February 25 and 27. From this evidence, it is clear that defendants did not act with deliberate

14

indifference to plaintiff's urological complaints. Instead, plaintiff received continuous and extensive treatment for his condition, including extensive laboratory and diagnostic testing. To the extent that plaintiff disagrees with the medical staff over his course of treatment or asserts that defendants were negligent in their treatment, this claim fails under the Eighth Amendment deliberate indifference standard. See, Wright, 766 F.2d at 849 (citing Estelle, 429 U.S. at 104-05).

Plaintiff likewise is unable to establish that defendants acted with deliberate indifference to his neurological complaints. Plaintiff's medical records again reference numerous medical visits and diagnostic testing. Medical staff at Butner performed numerous neurological exams with normal results. Ramsey noted that plaintiff's purported involuntary movements appeared to be voluntary and that plaintiff appeared to want to be sick. Again, it appears that plaintiff disagrees with medical staff over his course of treatment, which does not state a claim under the Eighth Amendment.[6] Thus, plaintiff is not able to satisfy the subjective prong of the Eighth Amendment test. Accordingly, there is no constitutional violation, and defendants are entitled to qualified immunity for plaintiff's Eighth Amendment claims.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to add and remove defendants (DE # 25) is GRANTED. Defendants' motion for summary judgment (DE # 20) also is GRANTED. Plaintiff's

---

[6] Plaintiff also briefly alleges that on September 17, 2007, he complained to the medical staff of chronic headaches, dizziness, cognitive problems, stabbing and shooting pains, as well as balance and coordination problems. Plaintiff alleges that his symptoms improved over the next nine months. Due to the general nature of his allegations and lack of injury, the court finds that these allegations are insufficient to state a constitutional violation.

15

claim against Ramsey is DISMISSED as frivolous. Plaintiff's request for a continuance pursuant

to Rule 56(d) is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 29ᵗʰ day of September, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge